Richard A. Smith
Claire E. Tonry
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PUGET SOUNDKEEPER ALLIANCE,       )
                                  )
                Plaintiff,        )        COMPLAINT
        v.                        )
                                  )
CITY OF TACOMA,                   )
                                  )
                Defendant.        )
                                  )
_____   )

## I.    INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff, a non-profit organization dedicated to

environmental protection, seeks a declaratory judgment, injunctive relief, the imposition of civil

penalties, and the award of costs, including attorneys' and expert witness fees, for defendant City

of Tacoma's repeated and ongoing violations of various "effluent standard(s) or limitation(s),"

per 33 U.S.C. § 1365(f), contained in the two National Pollutant Discharge Elimination System

("NPDES") permits authorizing discharges from the City's two sewage treatment plants, and an

order issued by the Department of Ecology ("Ecology") in 1994 concerning an order issued by

COMPLAINT - 1

Ecology to the City regarding these effluent standards or limitations in the City's operation of its pretreatment program. The alleged violations all concern the City's operation of its pretreatment program, which results in excessively polluted discharges to Puget Sound.

## II.      JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3.      In accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked January 12, 2016 ("Notice Letter").  In accordance with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Plaintiff provided copies of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE" or "Ecology") by mailing copies to these individuals on January 12, 2016.

4.      At the time of the filing of this Complaint, more than sixty (60) days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing or are reasonably likely to re-occur.  Defendant is in violation of its NPDES permits and an Ecology order concerning those permits and the CWA.

6.      At the time of the filing of this Complaint, neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

COMPLAINT - 2

7.      The source of the violations complained of is located in Pierce County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.      PARTIES

8.      Plaintiff, Puget Soundkeeper Alliance, is suing on behalf of itself and its member(s).  Puget Soundkeeper Alliance is a non-profit corporation organized under the laws of the State of Washington.  Puget Soundkeeper Alliance is a membership organization and has at least one member who is injured by Defendant's violations.  Puget Soundkeeper Alliance is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters.

9.      Plaintiff has representational standing to bring this action.  Plaintiff's members are reasonably concerned about the effects of discharges of pollutants, including toxic pollutants originating in the industrial discharges to Defendant's sewage treatment plants and passing through to discharges from these sewage treatment plants, on aquatic species and wildlife that Plaintiff's members observe, study, and enjoy.  Plaintiff's members are further concerned about the effects of discharges from Defendant's sewage treatment plants on human health.  Plaintiff has members who live, work, fish, watch wildlife, and recreate around waters in the Puget Sound and Commencement Bay and are affected by Defendant's discharges.  The recreational, scientific, economic, aesthetic and/or health interest of Plaintiff and its members have been, are being, and will be adversely affected by Defendant's violations of the CWA.    In addition, Plaintiff has organizational standing to bring this action, because it is actively engaged in a variety of educational and advocacy efforts to improve water quality in Puget Sound, and

COMPLAINT - 3

Defendant's failure to fulfill CWA reporting and planning requirements deprive Plaintiff of information needed to properly serve its members by providing information and taking appropriate action to advance its mission. The relief sought in this lawsuit can redress the injuries to Plaintiff's and Plaintiff's members' interests.

10.     Defendant City of Tacoma is a city under the municipal laws of the State of Washington.

11.     Defendant owns and operates two sewage treatment plants: (1) the North End Wastewater Plant No. 3 ("North Plant") and (2) Central Treatment Plant No. 1 ("Central Plant"), both of which discharge pollutants, including pollutants originating in industrial pretreatment facilities subject to the regulation under the City's pretreatment program.

## IV.     LEGAL BACKGROUND

12.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

13.     The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code Ch. 173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

14.     Federal pretreatment regulations promulgated by EPA are found at 40 C.F.R. § 403 and state pretreatment regulations promulgated by Ecology are found at WAC Ch. 173-216. Both sets of regulations apply to the City's operation as regulator of its pretreatment program that is intended to control discharges to its sewage treatment plants from "industrial users" that

COMPLAINT - 4

1  discharge wastewater to the City's sanitary sewer system and the City's two sewage treatment

2  plants.

3                                    **V.   FACTS**

4

5         15.     The City has violated and continues to violate the CWA by violating the

6  conditions of the NPDES permits issued to it by Ecology for discharges from its North Plant,

7  located at 4002 North Waterview Street, Tacoma, WA) (NPDES permit no. WA0037217, issued

8  June 4, 2009, expired June 30, 2014, but still in effect ("North Plant Permit")) and from its

9  Central Plant, located at 2201 Portland Avenue, Tacoma, WA) (NPDES permit no. WA0037087,

10 issued October 6, 2010, expired October 31, 2015, but still in effect ("Central Plant Permit")). In

11 this Complaint, the North Plant Permit and the Central Plant Permit are collectively referred to as

12 "the NPDES Permits."

13        16.     Conditions S6.A.1 of the NPDES Permits require the City to implement (1) its

14 pretreatment program in accordance with the legal authorities, policies, procedures, and financial

15 provisions described in the City's approved pretreatment program submittal entitled "Industrial

16 Pretreatment Program" of 1994, as amended by Ecology-approved revisions, and (2) the General

17 Pretreatment Regulations, 40 C.F.R. § 403. The City's pretreatment program includes the

18 requirements of Tacoma Municipal Code ("TMC") Ch. 12.08.

19        17.     In addition, S1.A.1 of the North Plant Permit requires that the City's pretreatment

20 program implementation be consistent with the State Waste Discharge Permit program of

21 Chapter 173-216 WAC.

22        18.     The City has also violated and continues to violate the CWA by violating the

23 terms of Ecology Order No. DE 94WQ-S358, dated October 7, 1994 (the "1994 Order"). The

24 1994 Order requires the City to fully implement the provisions of 40 C.F.R. § 403 and WAC

COMPLAINT - 5

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   Chapter 173-216, as well as its 1994 pretreatment program. It also requires compliance with the

2   NPDES Permits and is "an order issued by … a State with respect to" the NPDES Permits under

3   33 U.S.C. § 1365(a)(1)(B).

4        19.    Ecology audited the City's pretreatment program on August 28 and September 4,

5   2014, and summarized the audit results in a letter dated March 23, 2015, which is the source of

6   most of Plaintiff's allegations.

7        20.    WAC 173-216-110(1)(a) requires that pretreatment permits must specify

8   conditions necessary to prevent and control waste discharges including "all known, available,

9   and reasonable methods of prevention, control, and treatment" ("AKART"). Conditions S6.A.1.a

10  of the NPDES Permits also require the City's implementation of state standards, which include

11  AKART. WAC 173-216-020(1) and -110(1)(a); RCW 90.48.010 and .520; RCW 90.52.040.

12  Also, 1994 Order ¶ 2.D. requires the City to ensure that permits it issues fulfill applicable

13  requirements of WAC Chapter 173-216.

14       21.    Determination of AKART requires an engineering judgment and an economic

15  judgment. Case-by-case determinations of AKART, necessary whenever federal categorical

16  limits are inapplicable or incomplete, must be performed by and reviewed and approved by an

17  appropriately trained engineer. The precise level of treatment required to implement AKART

18  involves engineering determinations as to what treatment methods are "known," what treatment

19  methods are "available," and what treatment methods are "reasonable" with respect to the

20  particular facility in light of the factual circumstances surrounding it. To make those

21  determinations a review must be conducted by the regulating authority, here the City, to enable it

22  to decide which methods of treatment are suitable for the waste situation involved in the

23  particular case.

COMPLAINT - 6

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1   22.   In interpreting its regulations and the underlying statutory requirement, Ecology

2   has determined that the federal "best available technology" ("BAT") economic achievability test

3   is applicable to determine a pretreater's AKART and pretreatment effluent limitations. This

4   economic test is described on pages 103 – 113 of Chapter 4 of Ecology's 2015 Revised Permit

5   Writer's Manual. The test involves a 3-stage approach comprising a firm-level test, a plant-level

6   test, and a plant closure analysis. These tests are intended to evaluate the "economic

7   achievability" of available treatment and control technologies to assist the AKART

8   determination. A treatment technology is "economically achievable" "if its use would not cause

9   the [discharger's] plant to shut down." Id. at 104. "That is, the technology is economically

10  achievable if its annual cost is less than the plant's annual profits." Id.

11

12  23.   The City is in violation of these AKART-imposition requirements in its

13  implementation of its pretreatment program. The City does not conduct the requisite engineering

14  and economic analysis for each discharger, instead deferring to whatever treatment or control

15  authority is used or proposed by the discharger, requiring more rigorous technological controls,

16  perhaps, only if the discharger is unable to meet the numeric effluent limitations to which it is

17  subject.  However, local limits "are equivalent to water quality-based limits for surface

18  discharges to prevent violations of the water quality standards," and do not reflect AKART.  In

19  many cases, local limits are less stringent than AKART.  In addition, the City conducts no

20  economic analysis concerning the pollution control measures that it requires of its indirect

21  dischargers. As a result, none of the pretreatment permits issued by the City require

22  implementation of AKART.

23

24  24.   One example of this is the pretreatment permit issued by the City to Pierce

25  County Recycling, Composting and Disposal LLC ("LRI"). The permit authorizes LRI to

COMPLAINT - 7

discharge waste hauled from its landfill facility without requiring that the waste first be subject to treatment by the existing treatment system at the LRI facility, which was designed and installed to provide treatment of this waste stream before its disposal. Other examples include the Edman Company facility and Centralized Waste Treatment facilities (regulated under 40 C.F.R. § 437), but this allegation extends to all indirect dischargers regulated by the City.

25.     The City's pretreatment program does not satisfy the mandate to impose AKART as required by WAC 173-216-110(1)(a) and Conditions S6.A.1.a of the NPDES Permits, which require the City's implementation of state standards, including AKART, and 1994 Order ¶ 2.D. WAC 173-216-020(1) and -110(1)(a); RCW 90.48.010 and .520; RCW 90.52.040. Although TMC 12.08.010 defines AKART, its implementation in the City's pretreatment program is nowhere required by the code or the City's pretreatment program.  Instead, TMC 12.08.130 states that "all reasonable and economically achievable treatment shall be required to meet discharge limitations and requirements." This is distinct from and less stringent than AKART, which requires "all <u>known, available</u> and reasonable <u>methods of prevention, control,</u> and treatment." In other words, the City's program requires the lesser technological control standard of TMC 12.08.130 rather than AKART as required by the NPDES Permits and 1994 Order ¶ 2.D.

26.     Condition S6.A.6 of the Central Plant Permit and Condition S6.A.5 of the North Plant Permit require the city to "request and obtain approval from Ecology prior to implementing any significant changes to the local pretreatment program as approved," and that the procedure of 40 C.F.R. § 403.18(b) and (c) be followed in this regard. 40 C.F.R. § 403.18(a) requires program modification whenever there is a significant change in the operation of pretreatment program from the approved program. 40 C.F.R. § 403.18(c) and (d) require the City to submit

COMPLAINT - 8

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

proposed program changes to Ecology.  40 C.F.R. § 403.18(a), (c), and (d) require program

modification approval by Ecology before substantial or non-substantial changes to the City's

pretreatment program can become effective and lawfully implemented.

27.     Also, 1994 Order ¶ 2.A requires the City to ensure that revisions to its

pretreatment program are approved by Ecology before implementation.

28.     The City has violated these conditions and requirements by implementing

significant changes, both substantial and non-substantial (per definitions in 40 C.F.R. §

403.18(b)) to its pretreatment program without first requesting and obtaining approval from

Ecology. These significant changes include:  provision for special approved discharge

authorizations ("SADs"), permit shell and fact sheet shell changes, permit application template

changes, procedures for relaxed local limits, implementation of a new discharger classification

system, and changes to the prohibited waste program involving hauled waste and stormwater

discharges.

29.     Additional departures from Tacoma's approved program are reflected by the

December 2015 redlined version of TMC Ch. 12.08. Some or all of the changes reflected by the

redlines have been made by the City but not approved by Ecology.

30.     Conditions S6.A.1 of the North Plant Permit and the Central Plant Permit require

the City to implement its pretreatment program "in accordance with the legal authorities,

policies, procedures, and financial provisions" described in the City's approved pretreatment

program submittal entitled "Industrial Pretreatment Program" and dated 1994, as amended with

Ecology-approved revisions thereto. The City is in violation of these requirements because it has

been implementing its pretreatment program in accordance with the significant changes

identified above and in the December 2015 redlined version of TMC 12.08 that have not been

COMPLAINT - 9

1  approved by Ecology instead of in accordance with the 1994 program submittal with

2  amendments approved by Ecology.

3         31.    40 C.F.R. § 403.8(f)(2) requires the City to develop and implement procedures to

4  ensure compliance with the requirements of its pretreatment program. At a minimum, these

5  procedures must enable the City to identify all possible Industrial Users ("IUs") that might be

6  subject to its pretreatment program (§ 403.8(f)(2)(i)), and to identify the character and volume of

7  pollutants contributed to its sewage plants by the IUs so identified (§ 403(f)(2)(ii)). Under these

8  regulations, these identifications must be made available to Ecology or EPA upon request.

9         32.    With regard to these required IU survey activities, Central Plant Permit Condition

10  S6.A.6 requires the following:

11         Once per permit cycle (by December 15, 2014, if not on a rotating basis of 20

12         percent/year) confirm the proper categorization of each non-domestic source of

13         pollutants following Ecology guidance 'Conducting an Industrial User Survey.'

14         Also, develop and maintain a database which includes the categorization of each

15         non-domestic discharger which is either an SIU or a minor industrial user

16         [including all SIUs which have been downgraded in accordance with 403(t)(2)].

17         The database shall include a list of those industries for which a signed IU Survey

18         form has been determined to be necessary in order to ensure that potential sources

19         of pollution are aware of their requirements under the pretreatment program. The

20         database shall include the information necessary to demonstrate compliance with

21         each requirement of 403.8(f)(6) and 403.12(i)(1).

22         33.    The City is in violation of these requirements and conditions as it has not

23  confirmed the proper categorization of each non-domestic source of pollutants following the

COMPLAINT - 10

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

specified Ecology guidance; it has not developed and implemented procedures to identify all possible IUs or to identify the character and volume of pollutants contributed to its sewage plants by the IUs, including those in contributing jurisdictions; and it has not developed and maintained a database including the categorization of each non-domestic discharger and a list of those dischargers for which a signed IU Survey form has determined to be necessary. It has also failed to provide access to this information, including such database, to Ecology upon its request made during the 2014 program audit or thereafter.

34.     Under 40 C.F.R. § 403.8(f)(2)(iii), the City must notify IUs it identifies of their categorization status, applicable pretreatment standards, and any applicable requirements under CWA Sections 204(f) and 405 and subtitles C and D of the Resource Conservation and Recovery Act. The City is in violation of this requirement because it has not provided such notice to each identified IU. One subject (among others) of requirements of which the City has provided inadequate notice concerns requirements for slug discharge control plans, also called accidental spill prevention plans ("ASPPs"), described at 40 C.F.R. § 403.8(f)(2)(vi) and referenced by North Plant Permit Condition S6.A.2 and Central Plant Permit Condition S6.A.2 and A.3.

35.     Conditions S6.A.1.j of the NPDES Permits require the City to "[e]stablish where necessary, contracts or legally binding agreements with contributing jurisdictions to ensure compliance with applicable pretreatment requirements by commercial or industrial users within these jurisdictions. These contracts or agreements shall identify the agency responsible for the various implementation and enforcement activities to be performed in the contributing jurisdiction. In addition, the Permittee shall be required to develop a Memorandum of Understanding (or Interlocal Agreement) that outlines the specific roles, responsibilities and pretreatment activities of each jurisdiction." 40 C.F.R. § 403.8(f)(1) describes the legal

COMPLAINT - 11

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

authorities that the City must have and maintain to impose legally binding requirements on dischargers, to carry out inspections and monitoring and surveillance, and to conduct enforcement of its pretreatment requirements and implementation of its pretreatment program.

36.     1994 Order ¶ 2 clarifies that the City's authority and responsibility for its pretreatment program extend to the limits of both the City's geographic and service areas, and apply to all discharges to the City sewerage collection and treatment systems.

37.     Contributing jurisdictions to North Plant and Central Plant (also known as the City's publicly owned treatment works or "POTWs") with which such contracts or legally binding agreements are needed include, but may not be limited to, Pierce County, City of Fife, Town of Ruston, Town of Fircrest, Lakehaven Utility District, Federal Way, Gig Harbor, Graham, University Place, Browns Point, and Dash Point, as well as other contributing jurisdictions known to the City.

38.     The City is in violation of these conditions and requirements of the NPDES Permits because (1) the interlocal agreements executed by the City with contributing jurisdictions do not adequately address agency responsibility or authority for all relevant pretreatment program requirements, including surveying for new IUs, permitting, inspections, sampling, and enforcement, and (2) the City lacks any interlocal agreement with certain contributing jurisdictions (which are known to the City) leaving it with inadequate legal authority per § 403.8(f)(1) with respect to dischargers located in those jurisdictions.

39.     Conditions S6.A.1.b of the NPDES Permits require the City to issue industrial waste discharge permits to all significant industrial users ("SIUs") contributing to the treatment system, including those from other jurisdictions. 40 C.F.R. § 403.3(v)(1) defines SIU to include all industrial users subject to Categorical Pretreatment Standards under § 403.6 and 40 C.F.R.

COMPLAINT - 12

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Ch. I, Subchapter N, and any other industrial user that discharges an average of 25,000 gallons per day or more of process wastewater to the POTW, contributes a process wastestream that makes up five percent or more of the average dry weather hydraulic or organic capacity of the POTW treatment plant, or that is designated as an SIU by the City because it has a reasonable potential for adversely affecting the POTW's operation or for violating any pretreatment standard or requirement. Since the City has not obtained Ecology's approval to incorporate the provisions of 40 C.F.R. § 403.3(v)(2) and (3), which would allow the City to determine that a categorical industrial user is non-significant and that an industrial user discharging more than 25,000 gallons per day on average has no reasonable potential to adversely affect the POTW's operation or for violating any pretreatment standards or requirement is not an SIU, it may not re-categorize SIUs under § 403.3(v)(1) and (v)(2) as non-SIUs.

40.     The City is in violation of Conditions S6.A.1.b of the NPDES Permits because it has impermissibly asserted re-categorization of SIUs to non-SIU status under the criteria of 40 C.F.R. § 403.3(v)(2) and (3), which have not been authorized for inclusion in the City's pretreatment program by Ecology. As a result, the City has not issued industrial waste discharge permits to all contributing SIUs. These SIUs include, but may not be limited to, Brown and Haley, Lucks Food Decorating Company, Tacoma Landfill, Tacoma Asphalt Plant, BHS Chemical Specialties, Industrial Research Products (Fife), Mission Foods (Fife), fish processors (e.g., Northern Fish Products, Salmon Express Seafoods, Lusamerica Fish (Fife) and United Pacific Seafoods), and jewelers, as well as other SIUs known to the City.

41.     The City accepts hauled pollutants under a pretreatment permit it issued to Pierce County Recycling, Composting and Disposal LLC ("LRI"). The City is in violation of several

COMPLAINT - 13

provisions of Conditions S6 of the NPDES Permits and the incorporated regulatory requirements with respect to this permit and discharge.

42.    40 C.F.R. § 403.5(b)(8) prohibits the introduction into the North Plant and the Central Plant of any trucked or hauled pollutants, except at discharge points designated by the POTWs. 40 C.F.R. § 403.5(c)(1) requires the City to enforce this and other prohibitions. The pretreatment permit issued by the City to LRI for the discharge of its hauled waste to these plants does not designate discharge points and the City has not otherwise designated discharge points in compliance with applicable regulations. Thus, the City's acceptance of LRI's discharges of hauled waste are in violation of § 403.5(b)(8) and (c)(1).  LRI's discharges have occurred on dates known to the City.

43.    The City's approved pretreatment program does not provide for authorization of hauled waste discharges or for the imposition of alternative limits in lieu of the City's local limits. The permit issued to LRI by the City includes limits for arsenic and selenium that are higher than the local limits listed in the City's approved pretreatment program and codified in TMC Chapter 12.08, and authorizes the discharge of hauled waste. In addition, the City's inclusion of alternative limits in this case is not supported by analysis of available treatment technology, potential economic impacts, and potential impacts to the plants as required by TMC 12.08.040(B). The City is thus in violation of Conditions S6.A.1 of the NPDES Permits because it is not implementing its program consistent with the approved pretreatment program.

44.    40 C.F.R. § 403.8(f) specifies legal authority and procedures that must be fully and effectively exercised and implemented by the City as Control Authority. 40 C.F.R. § 403.8(f)(1)(iii) specifies legal authority to control through permit, order, or similar means the contribution to the POTW by each IU to ensure compliance with applicable pretreatment

COMPLAINT - 14

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

standards and requirements. 40 C.F.R. § 403.8(f)(2) requires the City to develop and implement procedures to ensure compliance with the requirements of a pretreatment program. WAC 173-216-110(1)(b) requires that permits include pretreatment requirements (defined at WAC 173-216-030(16)), including local limits and AKART requirements. The City's failure to implement its approved pretreatment program with regard to the LRI permit's alternative limits and lack of AKART-ensuring conditions constitutes the City's violation of these requirements. Also, 40 C.F.R. § 403.12(p)(1) requires that an IU, in this case LRI, notify the POTW, the EPA Regional Waste Management Division Director , and state hazardous waste authorities in writing of any discharge into the POTW of a substance that, if otherwise disposed of, would be a hazardous waste under 40 C.F.R. § 261, including specified information. The City neglected to include provisions to require this reporting of LRI in the permit it issued to LRI, also constituting violation of 40 C.F.R. § 403.8(f)(2). LRI's discharges have occurred on dates known to the City.

45.    The City's approved pretreatment program requires the City to transmit to Ecology a copy of a draft pretreatment permit before its finalization and issuance. The City failed to timely transmit to Ecology such a draft permit for the LRI discharge, and is thus in violation of Conditions S6.A.1 of the NPDES Permits.

46.    Conditions S4.D of the NPDES Permits require the City to submit written notice to Ecology whenever any new discharge is proposed that would be subject to pretreatment standards under 40 C.F.R. § 403 and CWA Section 307(b). The City is in violation of these conditions because it failed to submit written notice to Ecology of the LRI discharge when it was proposed.

47.    40 C.F.R. § 403.12(g)(3) requires that LRI's sampling be by 24-hour composite samples obtained through flow-proportional composite sampling techniques, unless time-

COMPLAINT - 15

proportional composite sampling or grab sampling is authorized by the City. If such alternative sampling is authorized by the City, as it has been for LRI, the alternative method must result in samples that are representative of the discharge and the decision to allow the alternative sampling must be documented in LRI's file at the City. The City is in violation of these requirements because the alternative sampling method for LRI (a grab sample from a tanker truck) does not result in a representative sample and the City's decision to allow it has not been documented by the City in LRI's file.

48.     40 C.F.R. § 403.8(f) specifies legal authority and procedures that must be fully and effectively exercised and implemented by the City as Control Authority. 40 C.F.R. § 403.8(f)(1)(v) requires that this legal authority enable the City to carry out all inspection, surveillance and monitoring procedures necessary to determine, independent of information supplied by IUs, compliance or noncompliance with applicable pretreatment standards and requirements by IUs. Conditions S6.A.1.d of the NPDES Permits require the City to perform inspections, surveillance, and monitoring activities on IUs to determine and/or confirm compliance with applicable pretreatment standards and requirements, and that such inspections be conducted annually. The City is in violation of § 403.8(f) and Conditions S6.A.1.d of the NPDES Permits because it does not carry out such inspection, surveillance, and monitoring procedures necessary to independently determine IU compliance or noncompliance with applicable standards and requirements. The City does not use the inspection forms included in its pretreatment program documentation (or manual) or any other checklist to ensure that inspections are consistently done to high standards and do not miss requisite areas of inspection. Also, inspections are conducted by persons untrained in pretreatment requirements and inspections, and unqualified to seek and discern pretreatment compliance issues.

COMPLAINT - 16

49.     Conditions S6.A.2 and 3 of the Central Plant Permit and Condition S6.A.2 of the North Plant Permit require the City to periodically evaluate whether each SIU needs a plan to control slug discharges in accordance with the Accidental Spill Prevention Program described in the approved Industrial Pretreatment Program. 40 C.F.R. § 403.8(f)(2)(vi) requires such evaluation by the City within one year of its designation of each SIU. "Slug discharge" means any discharge of a non-routine, episodic nature not specifically authorized by pretreatment permit, such as an accidental spill or unauthorized batch discharge. Per both these conditions of the NPDES Permits and § 403.8(f)(2)(vi), where slug discharge control plans (or Accidental Spill Prevention Plans (ASPPs)) are required, they must include the elements specified therein. The City is in violation of these conditions and requirements because it has not conducted all requisite evaluations of SIU slug discharge potential and because it does not require adequate slug discharge control plans (or ASPPs) containing all specified elements where they are required.

50.     WAC 173-216-060(2)(vii)(B), incorporated by North Plant Permit Condition S6.A.1, prohibits the discharge of stormwater into a municipal sewerage system unless approved by Ecology under extraordinary circumstances. The City is in violation of this prohibition as it authorizes discharges of stormwater into its municipal sewerage system without Ecology approval. For example, the City has authorized the discharge of stormwater from Edman Company, Truck Rail Handling, Targa/Sound Terminals, Pacific Northwest Terminals, Burlington Environmental, Northstar Chemical, and the Tacoma Landfill. Other stormwater discharges to its sewerage system that have not been approved by Ecology are known to the City.

51.     Conditions S6.A.1.a of the NPDES Permits require the City to enforce local limitations specified in Tacoma Municipal Code, Ch. 12.08. The City is in violation of these

COMPLAINT - 17

conditions because it has authorized discharges from SIUs at levels in excess of its local limits.

Examples include LRI (arsenic and selenium) and industrial laundries (pH limits). Other SIU

discharges authorized at levels in excess of local limits are known to the City. Procedures to

impose less stringent alternatives to local limits have not been approved by Ecology as part of

the City's pretreatment program and thus may not be lawfully used.

52.     Conditions S6.A.1.i of the NPDES Permits require the City to maintain adequate

staff, funds, and equipment to implement its pretreatment program. 1994 Order ¶ 2.C. requires

the City to maintain sufficient personnel and resources to satisfactorily administer its

pretreatment program. The City is in violation of these conditions and requirements because it

does not maintain adequate staff or funding to implement its pretreatment program.

## VI.     FIRST CAUSE OF ACTION

53.     The preceding paragraphs are incorporated herein.

54.     Defendant's violations of the NPDES Permits described herein and in the Notice

Letter constitute violations of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342,

and violations of "effluent standard(s) or limitation(s)" as defined by section 505 of the CWA, 33

U.S.C. § 1365.

55.     The violations committed by Defendant are ongoing or are reasonably likely to

continue to occur.  Any and all additional violations of the Permits and the CWA which occur

after those described in Plaintiffs' Notice Letter but before a final decision in this action should

be considered continuing violations subject to this Complaint.

56.     Without the imposition of appropriate civil penalties and the issuance of an

injunction, Defendant is likely to continue to violate the Permits and the CWA to the further

injury of Plaintiff, its members, and others.

COMPLAINT - 18

57.     A copy of this Complaint will be served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VII.     SECOND CAUSE OF ACTION

58.     The preceding paragraphs are incorporated herein.

59.     Defendant's violations of the 1994 Order described herein and in the Notice Letter constitute violations of an order issued by a state with respect to "effluent standard(s) or limitation(s)" under the CWA per 33 U.S.C. § 1365(a)(1)(B).

60.     The violations committed by Defendant are ongoing or are reasonably likely to continue to occur.  Any and all additional violations of the 1994 Order and the CWA which occur after those described in Plaintiffs' Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

61.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the 1994 Order and the CWA to the further injury of Plaintiff, its members, and others.

## VIII.   RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Defendant has violated and continues to be in violation of the NPDES Permits and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and the 1994 Order;

B.     Enjoin Defendant from activities that result in further violations of the Permits or the CWA;

COMPLAINT - 19

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

C.     Order Defendant to immediately implement pretreatment regulatory control measures necessary for compliance with the NPDES Permits, the 1994 Order, and applicable regulations;

D.     Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

E.     Grant such other preliminary and/or permanent injunctive relief as Plaintiff may from time to time request during the pendency of this case;

F.     Order Defendant to pay civil penalties of $37,500.00 per day of violation for each violation committed by Defendant pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

G.     Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

H.     Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 15th day of March, 2016.

Smith & Lowney, PLLC

By: s/Richard A. Smith
        Richard A. Smith, WSBA # 21788
By: s/Claire E. Tonry
        Claire E. Tonry, WSBA # 44497

2317 E. John Street, Seattle, WA 98112
Tel: (206) 860-2883; Fax: (206) 860-4187
Email: rasmithwa@igc.org, clairet@igc.org

*Attorneys for Plaintiffs*

COMPLAINT - 20